We have one of those happy occasions this morning, where one of our law clerks is seeking admission to a bar, and this law clerk happens to be one of my law clerks. So I will make the motion, and then pass the symbolic gavel to Judge Lind, who will grant or deny the motion, as the rest of the panel sees appropriate, and I will accuse. I move the admission of Danielle Rosenthal, who is a member of the bar and good standing at the highest court of New York. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. That's what I'm supposed to say, but I'll follow that as true, and I endorse it. A member of the bar should always believe in what the issue states in the motion. But I will, in addition, say that she's been a wonderful person to have as a law clerk, and has done very fine work, and that is not what I'm required to say, but I do say it. So I pass the gavel to Judge Lind. Well, after careful and thorough consideration, the court is happy to break your motion, and we're pleased to have you admitted to the bar of the court, and if you will now turn and address the deputy clerk, you can take the oath of office. Raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counsellor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Well, then, yeah, we welcome you to the bar. We have confidence that you will comport yourself to higher standards, and may all your arguments be good ones. Down to the major business of the morning, we have six cases on the calendar. A veterans claim, a contract case from the court of federal claims, a capital case, and three government employee cases, two of which are submitted on the briefs and will not be audited. The first case is Roger Newhouse v. Secretary of Veterans Affairs, 067302, Mr. Whitty. Good morning, Your Honor. May it please the court, my name is Peter Whitty, and I represent the appellant in this case, Mr. Roger Newhouse. The issues before the court today are an extension of the issues that were decided by this court in Sanders v. Simmons. In those cases, this court held that notice errors of any type under the Veterans Claims Assistance Act of 2000 were presumed prejudicial to the veteran and shifted to the VA the burden of demonstrating that he was not prejudiced by that notice effect. And while Simmons and Sanders clearly set forth that standard of presumed prejudice and clearly shifted the burden to the VA, the court has yet to address what the standard should be for the VA to overcome the presumption of prejudice to the veteran. Below, in this case, the CAVC reversed a BVA decision and found that the VA failed to give the appellant proper notice under the Veterans Claims Assistance Act, a Type I notice error, specifically that it had failed to give him notice of the type of evidence that he needed to substantiate his claim. The CAVC then went on to presume that that notice error was prejudicial, and it stated that it shifted the burden to the VA to overcome that presumption. The CAVC, however, then ultimately concluded that Mr. Newhouse had actual knowledge of the type of evidence necessary to substantiate his claim. We submit, Your Honors, that this was error. As a matter of law, the evidence in the record was legally insufficient to constitute actual knowledge. But the examination report was already in the file, wasn't it? There were many hearing examination reports that were in the file, Your Honor, but the evidence that was not submitted, I should say the evidence that was not before the panel below, was in addition to the hearing examinations that he had in the file. And that was his understanding of what the VA physician had told him, which was outside of the audiograms, that he had hearing loss that was left and right ear that was sufficient enough for him to have a compensable rating. Counselor, am I understanding your argument right that you're suggesting that we should review the lower court's finding of actual knowledge? We're not asking you to make a finding of facts, Your Honor. Are you asking us to review a finding of facts that comes from below? No, we don't think that it is a finding of facts. What is actual knowledge? It sounds awful factual to me. Clear. Actual knowledge, in this case, Your Honor, we would maintain that the evidence or the record itself is insufficient to show actual knowledge as a matter of law. The things that were relied on by the CADC, or the reasons that it gave for showing actual knowledge, were twofold as far as I can tell. One, that the veteran had knowledge of prior hearing tests and therefore should have known that he needed to give or had actual knowledge that he needed to give a second hearing test or a further hearing test. And then also he had participated in this claim. And we would submit that as a matter of law, those are not sufficient to show actual knowledge because they don't show the type of evidence that's necessary to substantiate his claim. And we would submit, Your Honor, that there's a difference between the veteran having information about his medical condition and him having knowledge of what constitutes either admissible or competent evidence before the VA. There's a dichotomy between these two things. We go to law school to learn what evidence is. And the appellant here, he's not a lawyer, he's not a doctor, and what he was asked to do by the VA was to provide any new information about his claim. And he did that. He looked and said, there are hearing tests that are in my file, but what is not in my file is this information that I received from my October 2000 hearing test from Dr. Sobel of Iron Mountain. And that information, if true, would allow him to have a compensable rate. Now, are you sure that wasn't in the file? Because we looked back over it and it looked to us as though it was part of the original file below. So the Iron Mountain report, at least the one that we were able to locate in the documents, seems to me was before. The Iron Mountain report, yes, Your Honor, is in the file. What is not in the file prior to the original adjudication is what he put into his supplemental statement of claim in July of 2002. And that is, when I went to Iron Mountain in 2000, the doctor told me that I had a hearing loss of 26% in my left ear and 49% in my right ear. And that information is not in the file. Okay, but it was part of the supplemental statement of the claim, so an SSOC was issued in this case, right? An SSOC was issued, yes. And if an SSOC is a re-adjudication of a claim, then we have satisfaction here, right? Because he put it in. There's nothing else he didn't put in, and they re-adjudicated it. He did put it in, and the VA told him that they were considering it. But it wasn't considered. And then the CAPC found it. Wait a minute, wait a minute, wait a minute. You don't know what's in their head when they're making their decisions. You only know what they put in their opinion. But let me tell you, I consider an awful lot of things that don't go into opinions I write. So why should we presume they didn't consider it if it was in front of them just because they didn't happen to cite it? Why should we consider? Why should we try to reach into their head and presume we know that they didn't consider it? Well, and that – what we would submit, Your Honor, is that that was the new evidence that was – the only new evidence that was put before the VVA, and it was not mentioned. It was not addressed in the opinion. And as Your Honors well know, they're supposed to state the bases and the reasons for their adjudication. And it was not stated at all. Mr. Witte, it seems to me that you're arguing fact issues. And I understood from your brief that the legal question that you wanted to bring before us is the question of whether the Veterans Court could make a determination on prejudice or whether that was not within their purview, that they would have to demand the case so that the Board could make that determination in the first instance. I don't think you're wrong, Your Honor. There are two issues that we'd like to bring before the Court today. The first one Judge Moore has already addressed, and that's the question of whether or not actual knowledge is a question of fact. The second one is what standard the CADC should apply. We understand clearly that the CADC is not a fact finder and that they are to make decisions on questions of law. And as this Court set forth in Sanderson-Simmons, the CADC does have to, in statutory, the CADC does have to take into account a prejudicial error. So they have to look at it. We understand that they have to look at it. The question is how do they look at it. Well, and when they look at it, they're going to make determinations as to whether there is or is not prejudice. Which is going to sound in many cases like a fact. It is going to sound like a fact determination, Your Honor. And that's why we would submit, first of all, that there has to be a standard by which the CADC adjudicates this. We would submit that in a case like, which is here, where the veteran submits material information, that information is not considered, or at least found to be not concrete evidence, which the CADC found, that there should be an irrebuttable presumption that there's prejudice. If there's not going to be, and that's a legal question, if there's not going to be an irrebuttable presumption, we would submit that there should be a heightened evidentiary standard, based on the proclaimed nature of the court, based on the fact that there's already been an adjudication that the VA has made in here. That heightened standard, we submit, should be clear and unmistakable evidence. Again, that is a legal question, and the CADC could look at that and decide whether or not the VA had met its burden of demonstrating clear and unmistakable evidence, by claiming unmistakable evidence, that he was not prejudiced. You could save the rest of your time, if you'd like, to continue. If I could just continue with one other point, Your Honor, and that is back to the question of actual knowledge, and whether or not that is a factual question. It does sound very factual, Your Honor. But again, our point is that in the record before the court, there is not evidence which will show, or information that would show, that he has knowledge of the type of information, and the type of evidence that he is supposed to submit. Again, the fact that he has information is clear. It can't be enough that a veteran who has a hearing problem, and knows that he needs to demonstrate that he has a hearing problem, constitutes actual knowledge. If that was the case, the notice requirement of the VCAA would be somewhat unnecessary, and we say that that's not true. Nor should it be actual knowledge if he participates in his claim, because as this court set forth in Sanders, it is the purpose of congressional intent that this statute require, or not require, but that the veteran be allowed to participate, and in fact, they would like him to participate, so we can have a more orderly adjudication of claims. So with that, Your Honors, I would yield the rest of my time. Thank you. You're most welcome. Mr. Hahn. Ms. Pleasantcourt, I think I'll begin with Judge Moore's observation with respect to the supplement statement of the case. If we look at the record of JA303, we see that, indeed, the statement that the veteran desires to have had reviewed by the regional office was, in fact, provided to the regional office. Not only is the medical exam information in there, but in the fourth paragraph down, the supplemental statement of the case relates that the veteran didn't form in one of the statements. The regional office of his, what he was told by the doctor. So that information was included, presented to the regional office, and then if we look at the previous page in the record of 302, we see that, indeed, in the supplemental statement of the case, the VA regional office continued to deny all of the benefits. So, indeed, the factual information that he claims he now wants to present has already been presented to the regional office. It has already been rejected. With respect to the issue of what he expects to be told, this, again, gets to an issue which we've discussed over and over again with respect to what the purpose of the DCA notice is. Again, it's the initial notice in the case that's designed to prize the veteran of what the type of evidence that's needed to substantiate his claim. It is not an explanation which identifies some sort of review and weighing of that evidence such that then the VA provides in its 5103A notice an outline for the veteran or an identification for the veteran to overcome what will eventually be, perhaps, a lack of evidence to substantiate his claim. Counselor? Yes. I have a question. Does this issue raise any January-type concerns for you? For example, and the reason I bring it up is, should the CBA in the first instance be making fact findings about whether he's prejudiced, or when notice hasn't been given, should it be the case that it gets remanded to the board to make that determination in the first instance? From our review in addressing this issue, just in other cases, we believe that because Congress, through 7162 or 7261B2, specifically charged the VA with the requirement to take into account the rule of prejudicial error, then that would trump any more general rule regarding fact finding. As the Court has already observed, in order to take account of prejudicial error, you have to review the entire record, and there is going to be an element of factual finding involved in that. However, I would submit that in this case I don't think the Court needs to even reach that issue because, as a review of the appendix at page 20 reveals, the board made all of the relevant findings with respect to actual knowledge that the Court later relied upon in finding a lack of prejudice. So, again, we think that the Veterans Court certainly is entitled to do that. In this case, it just so happens that the Veterans Court relied upon findings that were already made by the board in its decision. Going back to the prejudication, again, 5103 doesn't support that type of an analysis, and I'm not supportive of any other questions. What is your comment with respect to Mr. Witte's argument about what standard should apply in determining prejudice? Well, the standard in this case would be a standard with respect to how the Veterans Court sifts facts. The standard that the Veterans Court typically applies to the board's facts is clearly an erroneous one. Now, if I understand Mr. Newhouse correctly here today, he's arguing that this Court should somehow immerse itself in this factual analysis, and I think that really isn't somewhere this Court wants to go. I mean, again, the question of whether or not there is a way to establish prejudice, or a lack of prejudice, I should say, is embroiled in a factual review of the record. As the Veterans Court said repeatedly, and as this Court said in its Mayfield decision of last year, so I don't think it's necessary for this Court to even approach that topic. The Veterans Court, what it's doing now, is simply following, you know, looking at the record to determine whether actual knowledge would suffice. In this case, I think the record claiming shows that when Mr. Newhouse submitted his claim, first of all, we must remember this particular claim is one for an increased rating. Mr. Newhouse's complaints are that his hearing got worse, so he was entitled to a compensable rating. He's already been service-connected, so the only issue is, can I get money for my rating? So the evidence that he needs is evidence of increased hearing loss, and I think the record shows that Mr. Newhouse understood this from the very beginning. In his claim, he submitted this private record from medical ear and requested VA examinations on his hearing loss. So I think this is a very straightforward case in which the Veterans Court found that there was no question that in this claim for an increased rating based upon increased hearing loss, Mr. Newhouse knew exactly what he wanted, but requested all the right examinations, and simply is not satisfied with the results of those examinations. That really is a question of fact. Counsel, can we go back for a second? You directed me to page 20 of your opinion and suggested that here, these are the fact findings on the fact-generated question. You said, I don't need to reach that in this case because the CAVC actually relied on fact findings made by the board, so you're suggesting they didn't make any independent fact findings in the course of determining whether he had been prejudiced. I just want to make sure I'm understanding what you're saying. Two things. Let me begin by talking just briefly about Chenery. We don't believe Chenery is implicated at all in this case, because unlike the Mayfield situation in which there was a finding of sufficient notice, which was later affirmed by the Veterans Court, but for a different reason, relying upon a different document than the board ever relied upon, or at least didn't cite. In this case, the finding by the board that there was sufficient notice was actually reversed by the Veterans Court. So there's not an affirmance on a different ground which would call into question whether or not, I think, Well, this gets to the question of does Chenery preclude a prejudicial error analysis? And we would say no. Well, not does it preclude prejudicial analysis. Does it preclude fact-finding incident to such analysis? It's a different question. It's a different question, but our position would be no, it does not. The statute requires the Veterans Court to take into account the rule of prejudicial error. Congress is telling the Veterans Court, you've got to do this. So you're saying now the CABC is free to make fact findings in the context of prejudicial error pursuant to the statute. In the context of And I understand that argument, but in response to one of my previous questions, you had said on page 20 of the record, I don't have to reach that issue because you said that the CABC relied entirely on board-related fact findings relevant to the assessment of prejudicial error. And I'm reading page 20, and I just want to understand where it is that the board made all of these fact findings relevant to prejudicial error. Maybe I misunderstood you, but I thought that you had represented that the CABC didn't make any fact findings in this case. They analyzed only the board's fact findings. Well, what we said was that the CABC concluded, and it can be a fact finding, that the individual in this case had actual knowledge of what was needed to substantiate his claim. That being not a medical examination that showed he had experienced hearing loss, but that it being examinations for hearing loss, which would show what they showed. In this case, they didn't show any hearing loss or sufficient hearing loss to be compensable, I should say. What I'm referring to in the record as far as the board's decision is simply the board's recitation of the history of the case and its discussion of the veteran. If you look at the, I guess, the veteran had vigorously asserted in several statements he was entitled to a compensable rating during the severity of the hearing loss. The factual findings in the evidence section of the regional office decision indicating his submission of the Miracle Ear study as well as the request for the various VA examinations for whether or not he suffered from hearing loss. These are factual findings, and again, I apologize that the one I just meant. The first one is clearly in this board decision. The other ones are contained in the evidence summary of the regional office decision. So when you look at that record, which the veterans court did in this case, it's very different than the situation which this court has warned against in Hensman, in which in that case, the board below denied entitlement along a certain line, denied applicability of a regulation. And so in denying the applicability of the regulation did not make any factual findings vis-a-vis whether the person would have been service-connected provided the regulation applied. The veterans court disagreed, said it should, and went ahead and actually did the actual legwork, the factual findings to determine whether the veteran would have benefited from the application of regulation in that case. We have nothing like that here. This is simply based upon the very basic procedural history of the case, which was outlined by both the regional office and the board, as to whether or not the individual was aware of what he needed to be aware of when he submitted his claim. But if we were to disagree and find that the CADC made independent fact findings in order to reach its conclusion of a prejudicial error, you would suggest that that is within their province, according to the statute? Yes, we would. We would say that because the very specific instruction by Congress in this case to take into account the rule of prejudicial error would trump any general prohibition against fact-finding contained in the regular jurisdictional statute. And they were all part of the same legislation, so you'd have to read the entire statute together. And as the Court is probably aware in reading other prejudicial error or harmless error cases, including those made by this Court, appellate courts all the time look to, for example, proffers to determine whether or not harmless error or prejudicial error exists in a case. So I think it's well established generally with appellate courts that they can, in making their harmless error determinations, make what would appear to be factual findings in the first instance. Thank you, Mr. Hockey. No lawyer has ever penalized a doctor who's in their province. I won't take the opposite, but whether you have some above. Thank you, Your Honor. Unsurprisingly, I need to respectfully disagree with Mr. Hockey on a couple of points. First of all, with respect to your question, Judge Moore, on charity and the question of whether or not the CABC can make these fact findings initially, we, of course, disagree with that. We think there's only two situations where the CABC can find prejudicial error here under the statute. And the first is where the BBA found there to be prejudicial error, and they're affirming that. And the second would be that the BBA had made some findings to support a determination of prejudicial error. And then, in that situation, the CABC could look at the record for support of that findings, but it's not allowed to make that finding on its own in the first instance. Secondly, Judge, with respect to your question with respect to what standard they need to apply or does a standard need to apply, again, with respect, we disagree with the government. We're not saying in any way that this court or the CABC need to get mired in a factual analysis. What we're offering is that there must be some standard to apply. Otherwise, it's just a coin flip, and the court is completely insulated from it. And in this situation, we propose two alternative legal standards under which the CABC could find whether or not prejudicial error had occurred. So your legal standards that you're proposing, I'm just trying to understand this right. So you're saying when we suggested that actual knowledge might satisfy the no prejudicial error determination, that actual knowledge, according to you, must be proven by clear and convincing evidence rather than a preponderance of the evidence. That's what your argument really comes down to. Yes, Your Honor, because preponderance of the evidence would be a question of fact. And as this court has stated, clear and unmistakable evidence is a question of legal finding. And then one last point that we'd like to make with respect to the actual knowledge issue and whether or not there was evidence in the record. The question that we're trying to answer is not whether or not that evidence is competent. The question is whether or not that evidence was counted, and it was discounted by the CABC. And the whole purpose of notice, as this court has said routinely, is to allow the veteran to get all of his information before the VA in the first instance. And the best analogy that I can come up with is what happened to us in this case. When we filed a brief in this case, it did not meet a procedural requirement. The clerk's office was kind enough to kick that back to us and say, you didn't meet your procedural requirements. Now, that didn't require this court to find on the merits what had happened. What happened instead was the brief came back to us. We were allowed to make the procedural change and to get it back to you. And now this case is being heard on the merits. And all we're submitting is that the same thing should happen for the veteran in this case. He should have the opportunity to go back to the VA and say to the VA, this information I submitted was found to be not competent. And I would like to get it in the right form so I can get it before the VA so that they can consider all of the evidence that I have. If that answers your questions, Your Honor, that's all that I have. Thank you, Mr. Whitty. Thank you very much.